IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA    |
                            |           15 Cr. 213 (SJ)
                            |
v.                          |           The Hon. Sterling Johnson
                            |
NOELLE VELENTZAS,           |
                            |
              Defendant.    |
_____


**DEFENDANT NOELLE VELENTZAS' MEMORANDUM OF LAW IN SUPPORT
OF MOTIONS TO DISMISS COUNTS ONE AND TWO OF THE INDICTMENT**


SEAN M. MAHER
*Counsel for Noelle Velentzas*
The Law Offices of Sean M. Maher, PLLC
233 Broadway, Suite 801
New York, NY 10279
(212) 661-5333
(212) 227-5808 fax

TABLE OF CONTENTS

Introduction......................................................................................................................1

1.    Motion to dismiss Count One   ……………………………………………………..1

    A.  18 U.S.C. § 2332a is facially vague and overbroad in violation
        of the Fifth and First Amendments   …………………………………….……1

    (1) Applicable law   …………………………………………………………...1

    (2) Discussion  ……………………………………………………………...3

    B.  18 U.S.C. § 2332a(a)(2) as applied in Count One is vague and overbroad
        in violation of the First and Fifth Amendments   ………………………………9

    (1) Applicable law   ……………………………………………………………9

    (2) Discussion  ……………………………………………………………...10

    C.  Count One should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(iii)
        for lack of specificity  ………………………………………………………12

    (1) Applicable law  …………………………………………………………...12

    (2) Discussion  ………………………………………………………………12

    D.  Count One should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v)
        for failure to state an offense.   ………………………………………………13

2.    Motion to dismiss Count Two…………………………………………………...14

    A.  18 U.S.C. § 842(p) is facially vague and overbroad in
        violation of the First and Fifth Amendments   ………………………………14

    (1) Applicable Law  …………………………………………………………14

    (2) Discussion  ………………………………………………………………14

    B.  18 U.S.C. § 842(p) as applied in Count Two is vague and
        overbroad in violation of the Fifth and First Amendments.   …………………………20

    (1) Legal authority  ……………………………………………………………..20

(2) Discussion   …………………………………………………………………21

C.  Count Two should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(iii)
    for lack of specificity.   …………………………………………………22

    (1) Applicable law   …………………………………………………………...21

    (2) Discussion   …………………………………………………………………21

D.  Count Two should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v)
    for failure to state an offense.   …………………………………………23

Conclusion ............................................................................................................24

ii

**Introduction**

Ms. Velentzas moves to dismiss Counts One and Two of the indictment on several grounds.

Count One, which charges Ms. Velentzas with conspiring to use a weapon of mass destruction against persons and property within the United States, in violation of 18 U.S.C. § 2332a(a)(2), should be dismissed because both facially and as applied, it is unconstitutionally vague and overbroad.   Count One also lacks sufficient factual specificity and fails to state an offense.

Count Two, which charges Ms. Velentzas with teaching and distributing information pertaining to the making and use of an explosive, destructive device and weapon of mass destruction, in violation of 18 U.S.C. § 842(p), should be dismissed because both facially and as applied, it is unconstitutionally vague and overbroad.   Count Two also lacks sufficient factual specificity and fails to state an offense.

## 1.     Motion to dismiss Count One

### A.     18 U.S.C. § 2332a is facially vague and overbroad in violation of the Fifth and First Amendments.

### (1)     Applicable Law

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."   Supreme Court precedent establishes "that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."   *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2552, 2556 (2015)(citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)). "The

1

prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Id.* at 2556-2557 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). These principles apply to statutes defining elements of crimes. *Id.* at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)).

The Supreme Court has explained that "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, --- U.S. ---, 137 S. Ct. 886, 892 (2017)(quoting *Kolender*, 461 U.S. at 357).

"Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' [the Supreme Court has] relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 304 (2008)(quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–495, and nn. 6 and 7 (1982) and citing *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870–874 (1997)).

Under First Amendment overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). In order to maintain an appropriate balance between competing social costs, the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 292-293 (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989) and *Broadrick v.*

2

*Oklahoma*, 413 U.S. 601, 615 (1973)).   "Invalidation for overbreadth is 'strong medicine' that is

not to be 'casually employed.'"   *Id.* at 293 (quoting *Los Angeles Police Dept. v. United Reporting*

*Publishing Corp.*, 528 U.S. 32, 39 (1999)(other citations omitted)).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible

to determine whether a statute reaches too far without first knowing what the statute covers."   *Id.*

at 293.

**(2)      Discussion**

Count One of the indictment charges as follows:

> In or about and between May 2013 and April 2015, both dates being
> approximate and inclusive, within the Eastern District of New York and
> elsewhere, the defendants NOELLE VELENTZAS and ASIA SIDDIQUI,
> also known as "Najma Samaa" and "Murdiyyah," without lawful authority,
> did knowingly and intentionally conspire to use a weapon of mass
> destruction, to wit: an explosive device, against persons and property within
> the United States, and in furtherance of the offense a facility of interstate
> and foreign commerce, to wit: the Internet, was used.
> (Title 18, United States Code, Sections 2332a(a)(2) and 3551 et seq.)

Doc. No. 16 at 1, filed 4/30/15.

In turn, 18 U.S.C. § 2332a(a)(2) provides as follows:

> (a) Offense against a national of the United States or within the United
>      States .-- A person who, without lawful authority, uses, threatens, or
>      attempts or conspires to use, a weapon of mass destruction – …
>
>      (2) against any person or property within the United States, and
>
>           (A) the mail or any facility of interstate or foreign commerce is used
>                in furtherance of the offense;
>
>           (B) such property is used in interstate or foreign commerce or in an
>                activity that affects interstate or foreign commerce;
>
>           (C) any perpetrator travels in or causes another to travel in interstate
>                or foreign commerce in furtherance of the offense; or
>
>           (D) the offense, or the results of the offense, affect interstate or

3

foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have affected interstate or foreign commerce;

…

shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

Only three terms are defined under 18 U.S.C. § 2332a(c), which are as follows:

(c) Definitions. -- For purposes of this section --

(1) the term "national of the United States" has the meaning given in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

(2) the term "weapon of mass destruction" means--

(A) any destructive device as defined in section 921 of this title;

(B) any weapon that is designed or intended to cause death or serious bodily injury through the release, dissemination, or impact of toxic or poisonous chemicals, or their precursors;

(C) any weapon involving a biological agent, toxin, or vector (as those terms are defined in section 178 of this title); or

(D) any weapon that is designed to release radiation or radioactivity at a level dangerous to human life; and

(3) the term "property" includes all real and personal property.

Under 18 U.S.C. § 921(a)(4), the term "destructive device" means:

(A) any explosive, incendiary, or poison gas—

(i) bomb,

(ii) grenade,

(iii) rocket having a propellant charge of more than four ounces,

(iv) missile having an explosive or incendiary charge of more than one-quarter ounce,

(v) mine, or

(vi) device similar to any of the devices described in the preceding clauses;

4

(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10; or any other device which the Attorney General finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting, recreational or cultural purposes.

Section 2332a(a)(2) is facially vague in several respects that revolve around the statute's failure to define the terms "use," "without lawful authority," and "against;" the vagueness is compounded by the lack of any scienter requirement in the statute.

There is a fundamental fallacy underlying § 2332a(a)(2)'s statutory rubric that should impact how one evaluates the claims raised in the instant motions.   A "weapon of mass destruction" as defined in § 2332a(c)(2) is not necessarily a weapon and is not a device that necessarily will cause any destruction whatsoever, much less any destruction on a "mass" scale, whatever that means ("mass destruction" is yet another undefined term under § 2332a).   While the phrase "weapon of mass destruction" may be catchy for politicians appearing to be tough on terrorism, the difference between a lay person's understanding of what a weapon of mass destruction is and what constitutes a weapon of mass destruction under federal law is stark.   To avoid confusion caused by the misnomer "weapon of mass destruction" as defined under federal

law, references to a weapon of mass destruction as defined under federal law will be done with the phrase "weapon of mass destruction" in quotation marks.

The first reason why § 2332a(a)(2) is unconstitutionally vague is because there is no statutory definition of the term "use."   The term is completely open-ended and not tethered to any notion of causing violence or destruction.   Besides lacking a definition for the term "use," the statute does not contain any language modifying the word "use."   The term "use" in and of itself does not mean that the "weapon of mass destruction" is being, or planned to be, detonated, discharged, or triggered to cause an explosion that will generate enough energy to destroy a "mass" amount of lives or property.

Conceivably, one could "use" a "weapon of mass destruction" as a paperweight and be prosecuted under the statute.   One could "use" a "weapon of mass destruction" in an art installation in a remote Nevada desert or in the middle of Lake Michigan miles away from any person or property and be prosecuted.   One could "use" a "weapon of mass destruction" as an object to be photographed and then use the photo in an ad campaign calling for peace and tolerance. Are such "uses" of a "weapon of mass destruction" prohibited under § 2332a(a)(2)?   Is there "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." No, there isn't.

Second, there is no definition of the term "against."   Besides lacking a definition for the term "against," the statute does contain any language modifying the word "against."   While one might assume that using a "weapon of mass destruction" "against" a person presupposes a violent act, that is far from the case. Take the example of the ad campaign described above.   Suppose a person, religious group, or political party takes photos of a "weapon of mass destruction" in a completely safe environment and uses the photos in an ad campaign for peace and tolerance

6

against a political demagogue who regularly espouses incendiary racist invective against people of color and persons who are not Christian.   The "weapon of mass destruction" is being used "against" another person - the racist politician whose invective arguably causes much more destruction than some of the non-lethal devices that qualify as a "weapon of mass destruction" under § 921 - and thus could be considered a violation of § 2332a(a)(2), even though there was no intent to cause any actual physical harm or any type of physical risk whatsoever to that politician and no risk of injury or actual physical harm was ever leveled toward the politician.   Such a prohibition strikes squarely against protected political speech under First Amendment overbreadth doctrine.   *See* Brandenburg v. Ohio, 395 U.S. 444 (1969).

Third, there is no scienter requirement delineated in the statute. There is no requirement that one "knowingly" or "willfully" commit the proscribed acts or that one commit the proscribed acts with any intent whatsoever to cause harm, injury, or damage to any person or property.   Just as with the absence of any definition of the term "use," the failure of § 2332a to define "against" or to delineate any type of scienter requirement demonstrates that the statute lacks "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" and can be read to proscribe protected First Amendment speech and activities.

Contrast § 2332a(a)(2) with other statutes that address using force against other persons. For example, the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), defines a "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year ...
>    that—
>
> (i) has as an element the use, attempted use, or threatened use of physical
>    force against the person of another; or

>    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise
>         involves conduct that presents a serious potential risk of physical injury
>         to another.

The word "against" in subsection (i) is modified by the phrase "physical force."   The word "use" in the subsection (ii) residual clause is contextualized with the phrase "conduct that presents a serious potential risk of physical injury to another."   Such contextualization or modification is absent in § 2332a(a)(2).

Take another example. Under the Immigration and Naturalization Act ("INA"), 18 U.S.C. § 101(a)(43)(F), an "aggravated felony" is defined to include a "crime of violence," which is defined under 18 U.S.C. § 16(a) & (b) as "an offense that has as an element the use . . . of physical force against the person or property of another" and as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Again, the terms "use" and "against" are modified or otherwise contextualized to make clear that, unlike the terms as used in § 2332a(a), "physical force" or "a substantial risk of physical force" must be present for criminal culpability to attach.

The tautological phrase "without lawful authority" does not save the statute.   A person of ordinary intelligence can do something without lawful authority without having either a specific or generalized intent to commit a crime.   Adding to the trouble, section § 2332a(a) does not provide any guidance as to what constitutes "lawful authority" to "use" a "weapon of mass destruction:" there is no list of what activities are lawful, what statutes encompass "lawful authority" under § 2332a, or what, if any, defenses there are to an allegation that one is acting without "lawful authority."   Plain and simple, § 2332a(a)(2) is vague and overbroad under the Fifth and First

8

Amendments to the U.S. Constitution.

**B.     18 U.S.C. § 2332a(a)(2) as applied in Count One is vague and overbroad in violation of the First and Fifth Amendments.**

**(1)     Applicable law**

Under the vagueness and overbreadth doctrines of the Fifth and First Amendments, Ms. Velentzas challenges 18 U.S.C. § 2332a(a)(2) as it applies to her.

There is great overlap between the legal standards governing facial and as applied challenges made under vagueness and overbreadth grounds, just as there can be overlap between vagueness and overbreadth challenges.   *See, e.g. Stromberg v. California*, 283 U.S. 359 (1931).

When examining an as applied due process challenge, the Supreme Court has held that "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)(quoting *United States v. Williams,* 553 U.S. 285, 304 (2008)).   The Supreme Court considers "whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"   *Id.* at 18-19 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 (1982)).   "[W]hen a statute 'interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" *id.* at 19 (quoting *Hoffman Estates*, 455 U.S. at 499), "[b]ut 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Id.* (quoting *Williams,* 533 U.S. at 304)(other citations omitted).

Supreme Court precedent holds that "[a] plaintiff who engages in some conduct that is

9

clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 20 (quoting *Hoffman Estates, supra,* at 495).  "That rule makes no exception for conduct in the form of speech."  *Id.* (citing *Parker v. Levy,* 417 U.S. 733, 755–757 (1974)). "Thus, even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And [s]he certainly cannot do so based on the speech of others. Such a plaintiff may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression."  *Id.* (citing *Williams, supra,* at 304; *Hoffman Estates, supra,* at 494–495, 497).

**(2)  Discussion**

For all of the reasons discussed above in connection to the facial challenges, the Court should find that Ms. Velentzas has raised a meritorious as applied challenge under both vagueness and overbreadth doctrines.

Besides the reasons already stated, there are additional facts that bolster Ms. Velentzas' as applied challenges and that support Ms. Velentzas' concomitant motions to dismiss under Fed. R. Crim. P. 12.

Count One does not specifically allege that Ms. Velentzas conspired to use a "weapon of mass destruction" as defined under 18 U.S.C. § 921(a)(4), which defines "destructive device" as referenced in § 2332a(c)(2)(A).   The indictment states that she conspired to use "an explosive device," but the indictment does not state at all if and how the "explosive device" is the type of device described in § 921(a)(4).   There is no description of how the alleged "explosive device" is "similar to any of the devices described" under 18 U.S.C. § 921(a)(4)(A)(i)-(v).

10

The government has disclosed that it recovered three small propane canisters from the home of codefendant Asia Siddiqui.   These small propane canisters have not been altered in any way to be a type of device proscribed by 18 U.S.C. § 921(a)(4)(A).   No destructive device as defined under § 921(a)(4) was ever recovered from the person, home, or property of Ms. Velentzas.   Thus, § 2332a(a)(2), as applied to Ms. Velentzas, is so vague and overbroad as to encompass the mere possession by a codefendant of small canisters of propane that have not been altered in any way to be a proscribed destructive device.

In addition, Count One is unconstitutionally vague and overbroad as applied to Ms. Velentzas because there is no description of how she conspired to "use" the "explosive device." There is no language that she intended to use a "weapon of mass destruction" in any way that would risk causing injury or harm to a person or property, much less that she intended to cause any actual harm, injury, damage, or destruction to a person or property.

Although there is no scienter requirement in § 2332a(a)(2), Count One alleges that Ms. Velentzas "knowing and intentionally conspired to use a weapon of mass destruction."   18 U.S.C. § 2332a(a) authorizes prosecution for conspiring to use a "weapon of mass destruction", but it does not include a scienter requirement that such a conspiracy be done "knowingly and intentionally." Again, unlike the ACCA or the INA, there is no statutory requirement and no language in Count One that Ms. Velentzas intended in any way to use physical force against another person or property or to cause any type of risk of injury or harm to another person or property.   The insertion of non-statutory scienter language into Count One appears to be an attempt by the government to mask § 2332a(a)(2)'s constitutional infirmity.

Count One also fails to identify in any way what person or property Ms. Velentzas conspired to use a "weapon of mass destruction" against.   This is problematic because all put

11

together, Ms. Velentzas is facing a potential life sentence for conspiring to use an undisclosed yet potentially non-destructive "device" in an undisclosed manner against unknown person(s) or property without necessarily having any intent whatsoever to cause any harm or risk of harm to another person or property.   One would be hard pressed to imagine a criminal prosecution infused with greater vagueness or overbreadth.

## C.   Count One should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(iii) for lack of specificity.

### (1)   Applicable law

Under Fed. R. Crim. P. 12(b)(3)(B)(iii), a party may raise a motion to dismiss a charge in the indictment for lack of specificity.

Under the Fifth Amendment right to be indicted by a grand jury, an indictment must set forth the elements of the crime to insure that a defendant is not "convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted [her]."   *Russell v. United States*, 369 U.S. 749, 770 (1962).   Under the Sixth Amendment right to "be informed of the nature and cause of the accusation," an indictment must also be specific enough to permit a defendant to prepare a defense.   *See United States v. Hess*, 124 U.S. 483, 487 (1888); *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1978).   An indictment must not only allege the essential elements of the offense; it must also contain sufficient factual detail that "apprises the defendant of what [s]he must be prepared to meet."   *Cochran v. United States*, 157 U.S. 286, 290 (1985).

### (2)   Discussion

For all of the reasons discussed above, Count One fails to provide Ms. Velentzas notice of numerous specific acts and facts that are necessary to support the filing of the charge offense, as well as to afford Ms. Velentzas an adequate opportunity to defend herself.

For instance, Count One fails to provide specific notice of the following:

● What specific "explosive device" Ms. Velentzas conspired to use;

● How the alleged "explosive device" qualifies as a "weapon of mass destruction" under § 2332a(c)(2) and § 921(p)(4);

● How Ms. Velentzas intended to use the alleged "explosive device;"

● What person, persons, and/or property Ms. Velentzas conspired to use the "explosive device" against; and

● When and where the alleged "explosive device" was to be used.

The specific information raised above is needed for Mr. Velentzas to prepare her trial defense.   These are basic factual issues that Ms. Velentzas is entitled to know in order to challenge the government's case and in order to establish that the elements of Count One have not been met.

Knowing the nature of the "explosive device" is fundamental to Ms. Velentzas' defense because only specific types of devices qualify as a "weapon of mass destruction" under § 2332a(c)(2) and § 921(p)(4).   Likewise, the terms "use" and "against" are so broad that greater specificity is needed concerning the details of the alleged conspiracy so that Ms. Velentzas can defend herself at trial.   *See United States v. Brozyna,* 571 F.2d 742, 746 (2d Cir. 1978)(indictment should be sufficiently clear so that defendant "will not be misled while preparing [her] defense"). All of this specific information also is needed to insure that the grand jury returned the indicted count on the same facts that will be marshalled against Ms. Velentzas at trial.

**D.    Count One should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.**

Count One fails to state an offense for two reasons.   First, because 18 U.S.C. § 2332a(a)(2) is unconstitutionally vague and overbroad, Count One fails to state a criminal offense.

13

Second, by failing to allege that Ms. Velentzas conspired to use a destructive device as defined under 18 U.S.C. § 921(a)(4)(A), Count One fails to state an offense.

## 2.    Motion to dismiss Count Two

### A.    18 U.S.C. § 842(p) is facially vague and overbroad in violation of the First and Fifth Amendments.

**(1)    Applicable Law**:

The same vagueness and overbreadth legal doctrines described in Sections 1(A) & (B) above apply to Count Two and are incorporated by reference.

**(2)    Discussion**

Count Two of the indictment charges the following:

> In or about and between May 2013 and April 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NOELLE VELENTZAS and ASIA SIDDIQUI, also known as "Najma Samaa" and "Murdiyyah," together with others, did knowingly and intentionally teach and demonstrate the making and use of an explosive, destructive device, and weapon of mass destruction, and did distribute information pertaining to, in whole and in part, the manufacture and use of an explosive, destructive device, and weapon of mass destruction, with the intent that such teaching, demonstration, and information be used for, and in furtherance of, an activity that constitutes a federal crime of violence, to wit: use of a weapon of mass destruction.
> (Title 18, United States Code, Sections 842(p)(2)(A), 844(a)(2), 2 and 3551 et seq.)

In turn, 18 U.S.C. § 842(p)(2)(A) provides as follows:

> (2) Prohibition. -- It shall be unlawful for any person --
>
> > (A) to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence. . . .

14

The terms "destructive device," "explosive," and "weapon of mass destruction" are defined as follows under 18 U.S.C. § 842(p)(1)(A)-(C):

> (p) Distribution of Information Relating to Explosives, Destructive Devices, and Weapons of Mass Destruction.—
>
> (1) Definitions.--In this subsection—
>
> (A) the term "destructive device" has the same meaning as in section 921(a)(4);
>
> (B) the term "explosive" has the same meaning as in section 844(j); and
>
> (C) the term "weapon of mass destruction" has the same meaning as in section 2332a(c)(2).

Thus, the definitions of "destructive device" and "weapon of mass destruction" are the same as described in 1(A)(2) and 1(B)(2) above.    "Explosive device" is defined as follows under 18 U.S.C.§ 844(j).

> (j) For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section and section 842(p), the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

Section 842(p) is facially vague because (1) it does not define the phrase "to teach or demonstrate the making or use of;" (2) it does not define the phrase "distribute by any means information pertaining to, in whole or in part, the manufacture or use;" (3) it does not define "Federal crime of violence;" (4) it does not have a scienter requirement when the predicate federal crime of violence is "use of a weapon of mass destruction;" and (5) it can't be a

completed crime under a plain reading of the statute if § 2332a(a)(2) is the predicate offense because § 2332a(a)(2) does not qualify as a Federal crime of violence.

Section 842(p)'s failure to define the phrases "to teach or demonstrate the making or use of" and "distribute by any means information pertaining to, in whole or in part, the manufacture or use" leaves the statute lacking "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

Where does one draw the line at what constitutes illegal teaching?   What type of information is one prohibited from distributing?   Does helping another person understand basic concepts of math, physics, or chemistry qualify as illegal teaching or information distribution? Does the sharing of a math or science workbook constitute illegal teaching or information distribution?   Are entire fields of human inquiry, such as math, physics, and chemistry verboten?   If not, what subjects within a larger field of study are forbidden or permitted?   How does a person of ordinary intelligence make such judgment calls?   Can one teach another person about the periodic table and how to balance chemistry equations, but not discuss exothermic and endothermic reactions?   Can one teach someone how to do fractions, but not differential equations?   What about other subjects beyond the hardest sciences? Geography? Computer science? Molecular biology? Linguistics? Sociology? Advertising?   Political science? Economics?   Arabic?   English?   What level of knowledge?   First grade?   Sixth grade? High school – regular or AP?   Graduate level?   The lack of any attempt to delineate what type of "teaching" or "information distribution" triggers criminal culpability leaves the statute wide open to arbitrary and discriminatory enforcement, and ordinary people have no way of understanding what conduct is prohibited.

16

Contrast Section § 842(p) with the material support statute analyzed by the Supreme

Court in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).   In *Holder*, the plaintiffs

raised as applied Fifth Amendment Due Process vagueness and First Amendment freedom of

speech challenges to *inter alia* the terms "training" and "expert advice or assistance" as found in

18 U.S.C. § 2339A(b)(2) and (b)(3).

Although the Supreme Court rejected the as applied vagueness challenge to the terms

"training" and "expert advice or assistance," the reasoning of the Court supports Ms. Velentzas'

position.   The Court described the efforts that Congress had undertaken over time to define and

limit the terms "training" and "expert advice or assistance."   *Id.* at 12-15; 19-22.   The Court

also emphasized the knowledge requirement of the statute.   *Id.*

> Congress also took care to add narrowing definitions to the material-support
> statute over time. These definitions increased the clarity of the statute's
> terms. See § 2339A(b)(2) (" 'training' means instruction or teaching
> designed to impart a specific skill, as opposed to general knowledge"); §
> 2339A(b)(3) (" 'expert advice or assistance' means advice or assistance
> derived from scientific, technical or other specialized knowledge"); §
> 2339B(h) (clarifying the scope of "personnel"). And the knowledge
> requirement of the statute further reduces any potential for vagueness, as we
> have held with respect to other statutes containing a similar requirement.
> See *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597
> (2000); *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 523, 526,
> 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994); see also *Hoffman Estates,* 455
> U.S., at 499, 102 S.Ct. 1186.

*Id.* at 21.

In contrast, § 842(p) has no definition whatsoever of the phrases "to teach or demonstrate

the making or use of" or "distribute by any means information pertaining to, in whole or in part,

the manufacture or use."

Section 842(p) provides no definition for the phrase "Federal crime of violence." *See*

*United States v. Hull*, 456 F.3d 133, 137-138 (3d Cir. 2006)(discussing how § 842(p) provides no

17

definition of what constitutes a "Federal crime of violence").   The statute does not refer to any other statutes, regulations, or rules for a definition or guidance as to what is meant by "Federal crime of violence."

In *Leocal v. Ashcroft,* 543 U.S. 1 (2004), the Supreme Court held that an alien's conviction for driving under the influence of alcohol ("DUI") and causing serious bodily injury in an accident, in violation of Florida law, was not a "crime of violence," and therefore, was not an "aggravated felony" warranting deportation.   While analyzing whether a Florida DUI conviction was an aggravated felony under the INA, the Court asserted in a footnote that "a number of statutes criminalize conduct that has as an element the commission of a crime of violence under § 16.   *See, e.g.,* 18 U.S.C. § 842(p) (prohibiting the distribution of information relating to explosives, destructive devices, and weapons of mass destruction in relation to a crime of violence)."   *Leocal*, 543 U.S. at 7 n.4 (2004).   Thus, the Supreme Court has indicated in dicta that one should look to 18 U.S.C. § 16's definition of "crime of violence" to understand what § 842(p) means by "Federal crime of violence," however the Court has yet to address the issue directly.

Turning back to 18 U.S.C. § 16, "crime of violence" is defined as follows:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Assuming, *arguendo*, that one should adopt § 16's definition of "crime of violence" as the exact definition of "Federal crime of violence" as employed in § 842(p), which Ms.

18

Velentzas contests, there are fatal flaws if the "crime of violence" subsumed in a § 842(p) prosecution is a violation of § 2332a(a)(2).

As shown above, § 2332a(a)(2) does not have a scienter requirement.   Unlike other offenses that are considered crimes of violence under § 16(a) & (b), one could be convicted of violating § 2332a(a)(2) when (1) there is *no use, attempted use, or threatened use of physical force against* the person or property of another and when (2) there is *no substantial risk that physical force against* the person or property of another may be used in the course of committing the offense.   Because § 2332a(a)(2) does not require the use of physical force or a substantial risk that physical force might be used, § 2332a(a)(2) simply does not qualify as crime of violence under § 16, which leads to fatal vagueness and overbreadth.

In *Unites States v. Hull*, 456 F.3d 133 (3d Cir. 2010), a defendant convicted of violating 18 U.S.C. § 842(p)(2)(A) for possessing a pipe bomb appealed on Fifth Amendment vagueness grounds.   The Third Circuit vacated the conviction, holding that mere possession of a pipe bomb does not qualify as a "Federal crime of violence" under 18 U.S.C. § 842(p)(2)(A).   *Id.* at 137-141; 145.   While the Third Circuit did draw a distinction between mere possession of a pipe bomb versus use of a pipe bomb, the Third Circuit highlighted how the Supreme Court in *Leocal* held that "use" under § 16(a) requires the "active employment" of force:

> Under § 16(a), the Court held that "use" requires the "active employment" of force, and therefore a degree of intent higher than negligence. *Leocal,* 543 U.S. at 9, 125 S.Ct. 377. Nor did the DUI conviction qualify under § 16(b), which "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another *in committing the offense." Leocal,* 543 U.S. at 10, 125 S.Ct. 377 (emphasis added). "Thus, § 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct. The 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." *Id.* at 10 n. 7, 125 S.Ct. 377.

*Id.* at 138.   The Third Circuit went on to note that "[p]ossessing a pipe bomb does not necessarily include a substantial risk that the possessor might step in and intentionally detonate the device, i.e., use force within the meaning of § 16."   *Id.* at 140.

No Court has addressed whether § 2332a(a)(2) is a crime of violence under a § 16 analysis.   For all of the reasons already outlined above, § 2332a(a)(2), which has no scienter requirement and no requirement that any person or property be placed at risk of being harmed, damaged, or destroyed, does not qualify as a crime of violence under § 16.

The Court should be aware that in *United States v. Coronado*, 461 F. Supp.2d 1209 (S.D. Cal. 2006), a district judge in the Southern District of California heard a challenge to § 842(p) on vagueness and overbreadth grounds.   The district judge noted that "there are no authorities directly addressing a facial or an as applied attack on the constitutionality of 18 U.S.C. § 842(p)(2)(A)," *id.* at 1213, and declined to grant the defendant's facial attack on overbreadth and vagueness grounds.   *Id.* at 1216, 1217.   The district judge reserved on ruling on whether § 842(p)(2)(A) is unconstitutionally overbroad and vague as applied, finding that the argument was premature because the factual record had yet to be developed.   *Id.* at 1217-1218.

In sum, 18 U.S.C. § 842(p) lacks "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" and can be read to proscribe protected First Amendment speech and activities.   Thus, Count Two should be dismissed.

**B.      18 U.S.C. § 842(p) as applied in Count Two is vague and overbroad in violation of the Fifth and First Amendments.**

**(1)      Legal authority**

The same Fifth and First Amendment vagueness and overbreadth legal doctrines described

in 1(A), 1(B), and 2(A) above apply to an as applied vagueness and overbreadth challenge to Count Two and are incorporated by reference.

**(2)      Discussion**

In addition to all of the arguments raised above that are applicable to as applied vagueness and overbreadth challenges, there are additional factors that the Court should consider.

First, Count Two does not provide any description whatsoever of what Ms. Velentzas supposedly taught, distributed, or demonstrated that furthered a Federal crime of violence.

Second, Count Two does not describe the manner – where, when, how, to whom – in which Ms. Velentzas supposedly taught, distributed, or demonstrated anything that furthered a Federal crime of violence.

Third, § 842(p) does not define the phrase "Federal crime of violence" and, even under a § 16 analysis, § 2332a(a)(2) does not qualify as a "crime of violence."

Fourth, the government has not provided any discovery that demonstrates that Ms. Velentzas engaged in any type of teaching, information distribution, or demonstration that was designed to cause any harm or risk of harm to any person or property.   Any "teaching," "information distribution," or "demonstration" Ms. Velentzas engaged in was protected First Amendment speech and activity.

Ms. Velentzas stands charged with the crime of teaching or distributing information, yet has not been provided any notice of what she taught or what information she distributed, how any teaching or information that she distributed was intended to further a Federal crime of violence, or how she should have known – or any other person of ordinary intelligence should have known – that any specific teaching, demonstration, or information distribution that she did actually could be prosecuted as a federal crime.

In sum, 18 U.S.C. § 842(p) lacks "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" and can be read to proscribe protected First Amendment speech and activities.   Thus, Count Two should be dismissed.

**C.     Count Two should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(iii) for lack of specificity.**

**(1)     Applicable law**

The applicable law regarding the need for specificity in each count in an indictment is set for above in section 1(C)(1) and is incorporated by reference herein.

**(2)     Discussion**

For all of the reasons discussed above, Count Two fails to provide Ms. Velentzas notice of numerous specific acts and facts that are necessary to support the filing of the charge offense, as well as to afford Ms. Velentzas an adequate opportunity to defend herself.

As set forth in Section 1(C)(2) above, all the information that is missing in Count One also should have been provided in relation to Count Two because the violation § 2332a(a)(2) is a requisite crime for the prosecution of Count Two.   Thus, the facts and argument raised in Section 1(C)(2) above is incorporated by reference herein.

Besides all of the information missing from Count One that equally applies to Count Two, Count Two fails to provide specific notice of the following:

- What specific acts of teaching Ms. Velentzas is charged with committing;

- What specific information Ms. Velentzas is charged with distributing;

- What specific demonstrations Ms. Velentzas is charged with committing;

- When, where, how, and to whom did Ms. Velentzas commit any illegal teaching, information distribution, or demonstrations;

22

● How was any teaching, information distribution, or demonstration committed by Ms. Velentzas intended to further a Federal crime of violence;

● How would any teaching, information distribution, or demonstration committed by Ms. Velentzas actually further a Federal crime of violence; and

● What "explosive, destructive device, and weapon of mass destruction" did Ms. Velentzas "teach and demonstrate the making and use of."

The specific information raised above is needed for Ms. Velentzas to prepare her trial defense.   These are basic factual issues that Ms. Velentzas is entitled to know in order to challenge the government's case and in order to establish that the elements of Count Two have not been met.

Unless Ms. Velentzas is put on notice as to the specified information raised above, she has no way of showing a jury that any supposed teaching, information distribution, or demonstration that she did had no relation to the furtherance of a Federal crime of violence.   These subjects go straight to the heart of the case, which is why it is so important that Ms. Velentzas be given adequate notice prior to trial.   As raised above, all of this specific information also is needed to insure that the grand jury returned the indicted count on the same facts that will be marshalled against Ms. Velentzas at trial.

**D.      Count Two should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.**

Count Two fails to state an offense for two reasons.

First, because 18 U.S.C. § 842(p) is unconstitutionally vague and overbroad, Count Two fails to state a criminal offense.

Second, a violation of 18 U.S.C. § 2332a(a)(2) as alleged in the indictment can't serve as a requisite Federal crime of violence for criminal culpability to attach under 18 U.S.C. § 842(p).

23

This is because § 2332a(a)(2) is not a crime of violence under § 16 and is not otherwise a Federal crime of violence under § 842(p), which provides no definition of a Federal crime of violence. Thus, Count Two should be dismissed.

## CONCLUSION

Accordingly, for the foregoing reasons, Ms. Velentzas respectfully requests that the Court dismiss Counts One and Two of the indictment.

Dated: January 15, 2018
      New York, New York

                    Respectfully submitted,

                    _____/S/_____
                    SEAN M. MAHER
                    *Counsel for Noelle Velentzas*
                    The Law Offices of Sean M. Maher, PLLC
                    233 Broadway, Suite 801
                    New York, NY 10279
                    (212) 661-5333
                    (212) 227-5808 fax