

U.S. Department of Justice

United States Attorney
Eastern District of New York

DMP:CRH/JGH/JEA  271 Cadman Plaza East
F. #2014R00196  Brooklyn, New York 11201

February 28, 2020

By E-Mail and ECF

Shayna Bryant
Senior United States Probation Officer
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York 11201

      Re: United States v. Noelle Velentzas
           Criminal Docket No. 15-213 (S-2) (SJ)

Dear Officer Bryant:

      The government writes to provide additional facts for the Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation" or "USPO") and to respond to the defendant's letter, dated February 17, 2020 ("Def.'s PSR Letter") objecting to the PSR. The government responds to the defendant's objections, corrections and additions as follows:

I.    The PSR Should Incorporate by Reference the Stipulated Facts

      The government requests that the PSR incorporate by reference the stipulated facts attached to the defendant's plea agreement (the "Stipulated Facts"), and confirm that those facts have been considered by Probation as part of its sentencing calculation. A copy of those facts, and exhibits to those facts, are attached hereto as Exhibit 1.

II.    Response to Objections to Facts and Additional Facts

      The defendant's objections to certain facts contained in the PSR are without merit and should be rejected by Probation. The government responds to the defendant's objections and proposed additional facts as follows:

      First, the defendant objects to the references to a "plot . . . to build a bomb for use in a terrorist attack" and "planning and executing the terrorist scheme," and that the defendants "demonstrated an interest in committing terrorist acts on American soil." See Def.'s PSR Letter at 1-2 (Objections to PSR ¶¶ 3, 5 27 and 30). The defendant also objects to paragraph 25 of the PSR because it "mischaracterizes the charges and evidence in the case" as

"[t]here was no plot to actually use a bomb against any people or any specific target or to commit acts of terrorism [and] there were no verbal threats to commit acts of violence against law enforcement." Id. at 2 (Objections to PSR ¶¶ 25 and 28). In like manner, the defendant proposes additional facts to the PSR—specifically, that "[n]o attack was ever planned, no bomb was ever built, no targets were ever set, and no agreement was ever made to attack any person." Id. at 1 (Objection to PSR ¶ 5).

The Stipulated Facts in this case confirm that the defendant and her co-conspirator learned and taught each other how to create an explosive device to be detonated in a terrorist attack in the United States, specifically aimed at law enforcement. See Exhibit 1 ¶¶ 8, 9, 10, 14, 15, 16, 17, 18, 19, 20, 24, 25, 21, 26, 28, 29 and 30. To cite just one example, the defendant stated that the Boston Marathon bombers had erred in attacking people, but, in contrast, praised Mohammed Shnewer, who was "charged with quite an admirable thing . . . conspiring to attack Fort Dix in New Jersey," which was a plot against military targets. Id. ¶¶ 14 and 25. Thus, the PSR appropriately concludes that the terrorism enhancement is warranted based on the facts involved in this case. See PSR ¶ 46.

The defendant also objects to the statements in the PSR that the defendant was in communication with Al Qaeda in the Arabian Peninsula and that the defendant "stockpiled bomb-making materials." See Def.'s PSR Letter at 1 (Objection to PSR ¶ 5). The government does not object to modifying paragraph 5 of the PSR to say "Siddiqui had been in communication with Al Qaeda in the Arabian Peninsula (AQAP), and Siddiqui and Velentzas watched violent videos . . ." The government also does not object to modifying paragraph 5 of the PSR to say "and sought to acquire bomb-making materials."

The defendant also objects that the PSR does not include "that it was the UC who provided the Anarchist Cookbook to the defendants." See Def.'s PSR Letter at 2 (Objection to PSR ¶ 20). The government submits that this is not relevant because the UC did so at the defendant's direction. To the extent Probation chooses to include this information in the PSR, the government respectfully requests that Probation also add the following relevant context:

> On November 23, 2014, Velentzas asked the UC whether she had printed out a copy of "the Inspire Magazine," which the parties have stipulated is a publication used to disseminate AQAP propaganda and to recruit Muslims to join cause with AQAP. See Exhibit 1 ¶ 1. During this same meeting, the defendant, Velentzas and the UC continued to discuss the Anarchist Cookbook and referenced a prior discussion they had about a page of the book containing information on a fertilizer bomb. See Exhibit 1 ¶ 21.

The defendant also objects to the PSR's use of the term "three gas tanks" and instead suggests using the term "three small propane canisters." See Def.'s PSR Letter at 2 (Objection to PSR ¶ 24). The government does not object to the modification of this information. However, to the extent Probation chooses to modify this information in the PSR,

2

the government respectfully requests that Probation use the term "three 400 gram propane gas tanks," which is set forth in the Stipulated Facts at paragraph 35b. See Exhibit 1 ¶ 35b.

The defendant also objects to paragraph 43 of the PSR because it does not include a 1-level reduction based on a Global Disposition. See Def.'s PSR Letter at 3 (Objection to ¶ 43). The government takes no position regarding where in the PSR Probation includes this information, but does object to the defendant's calculation of the offense level as 16.

Finally, the government takes no position regarding the defendant's objections to paragraphs 54 and 59 of the PSR.

III. The PSR's Guidelines Calculations Are Accurate

The defendant objects to the Guidelines Calculation in the PSR. See Def.'s PSR Letter at 2-3 (Objections to PSR ¶¶ 26, 29, 34, 39, 72).

A. A Base Offense Level of 33 Is Correct Because The Defendant Intended to Kill People With An Explosive Device

The government agrees that the Base Offense Level in this case is 33. See PSR ¶ 34. The government reaches this conclusion based on the following:

1. The Statutory Index directs that Section 2K1.3 of the Guidelines (Unlawful receipt, possession, or transportation of explosive materials; prohibited transactions involving explosive materials) be applied in the first instance.[1] See App'x A to U.S.S.G.

2. Section 2K1.3(a) provides for a base offense level of 18 for anyone convicted under § 842(p)(2). However, Section 2K1.3(c) states that if a defendant is "convicted under 18 U.S.C. § 842(p)(2)" to apply Section 2X1.1 (Attempt, Solicitation or Conspiracy) "in respect to that other offense if the resulting offense level is greater than that determined above." In this case, the "other offense" is the use of weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2).

3. Section 2X1.1(a) directs the use of the base offense level from the guideline for the substantive offense. Per the Statutory Index to the Guidelines, the use of weapon of mass destruction under § 2332a(a)(2) is analyzed using Sections 2A6.1, 2K1.4 or 2M6.1. See App'x A to U.S.S.G. Neither Sections 2M6.1 nor 2A6.1 apply to

---

[1] Although the Statutory Index directs the use of either Section 2K1.3 or 2M6.1 for a conviction under § 842(p)(2), Section 2M6.1 only applies to activity involving nuclear, biological or chemical weapons. See App. Note 1 to Section 2M6.1.

3

these facts.[2] Accordingly, the appropriate starting point for analysis is Section 2K1.4 for "arson [or] property damage by use of explosives."

4. Section 2K1.4(a) provides for a base offense level of 24 if the offense "created a substantial risk of death or bodily injury."

5. However, Section 2K1.4(c) states that "[i]f death results, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person)" if the resulting offense level is greater (emphasis added).

6. Since the defendant and her co-conspirator made statements reflecting their intent to kill or seriously harm people with their bomb, Section 2A1.5 (Conspiracy or Solicitation to Commit Murder) should be applied, which leads to a base offense level of 33. See U.S.S.G. § 2A1.5(a).

The defendant's primary dispute is whether Section 2A1.5 (Conspiracy or Solicitation to Commit Murder) should be applied and raise the base offense level to 33. (Id. at 7-10.) As noted above, the Guidelines directs the application of "the most analogous guideline" to the relevant offense—here the use of a weapon of mass destruction. The defendant and her co-conspirator researched explosives for the purpose of using a weapon of mass destruction, and the defendant and her co-conspirator repeatedly compared their plans to other terrorist attacks that caused scores of murders. There is no question that the guideline for conspiring to commit murder is the most analogous given these facts.

The defendant claims that Section 2A1.5 should not apply because the defendant never "conspired to kill anyone in a bomb plot" and "there was no plan to detonate an explosive against any specific target." See Def.'s PSR Letter at 2 (Objection to PSR ¶¶ 26, 34). Murder is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a), meaning that there must be an intent to kill another person.

The defendant had that intent. The defendant did not research how to build a bomb because she was generally interested in how bombs work. She has admitted, pursuant to her guilty plea, that she was studying how to make an explosive device "with the intent that…[the device] be used for, or in furtherance of, an activity that constitutes a Federal crime of violence." 18 U.S.C. § 842(p)(2)(A). Since a crime of violence is an offense that includes the "use of physical force against the person or property of another," at a bare minimum the defendant must admit that her intent was that an explosive device would be detonated against

---

[2] As previously noted, Section 2M6.1 only applies to activity involving nuclear, biological or chemical weapons. Section 2A6.1 involves "threatening or harassing communications," which is not supported by the facts of this case.

4

a person or property. Given the nature of how an explosive device is used, the likelihood of killing someone is already significant.

The stipulated facts in this case confirm that the defendant intended for any bomb she and her co-conspirator made to kill people. The focus of conversations between the defendant and her co-conspirator are prior examples of terrorist attacks and jihadist propaganda that promotes the use of explosives to kill people. The defendant praised the attacks of September 11, 2001 and said that being a martyr through a suicide attack guarantees entrance into heaven. The defendant and her co-conspirator also discussed the attempted car bombing of Times Square by Faizal Shahzad, which would have killed scores of people if it had detonated properly. And, notably, the defendant similarly studied car bomb instructions.

Accordingly, the preponderance of the evidence in this case clearly supports the conclusion that the defendant intended to commit murder with the explosive devices that she was studying to build, and that it was therefore appropriate for Probation to conclude that Section 2A1.5 is "the most analogous guideline" to the relevant offense. Further, it should be noted that the defendant advances the same objection based on the same facts that Siddiqui did during her sentencing which both Probation and the Court rejected.

    B.    The Terrorism Enhancement Is Correctly Applied

The defendant also disputes the application of the terrorism enhancement. See Def.'s PSR Letter at 2-3 (Objections to PSR ¶¶ 36, 46 and 72). The terrorism enhancement under Section 3A1.4 applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." A "federal crime of terrorism" is a crime that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct" and is a violation of one or more enumerated federal statutes. See 18 U.S.C. § 2332b(g)(5).

For the purposes of applying the enhancement, the offense of conviction does not have to be on the enumerated list in Section 2332b, because the enhancement applies both to crimes that "involved," or were also "intended to promote," a federal crime of terrorism. See, e.g., United States v. Awan, 607 F.3d 306 (2d Cir. 2010) (reversing district court decision not to apply enhancement to defendant convicted of conspiracy to provide material support to conspiracy to commit murder, kidnapping and maiming, and holding that the phrase "intended to promote" in Section 3A1.4 "must be applicable…where the defendant's offense or relevant conduct does not include a federal crime of terrorism) (emphasis in original). The defendant does not dispute that this prong of the enhancement applies in this case because the offense of conviction was intended to promote the use of a weapon of mass destruction, which is on the enumerated list of terrorism crimes.

The defendant argues instead that that the enhancement should not apply because the defendant "did not have the specific intent to commit an offense that was 'calculated to influence or affect the conduct of the government by intimidation or coercion,

5

or to retaliate against government conduct.'" See Def.'s PSR Letter at 3 (Objection to PSR ¶ 36).

This argument is contrary to binding Second Circuit precedent. In United States v. Awan, 607 F.3d 306, 317 (2010), the Second Circuit expressly held that the government does not have to prove that the defendant herself committed an offense that was calculated to influence the conduct of government:

> Under the "intended to promote" prong, however, so long as the defendant's offense was intended to encourage, further, or bring about a federal crime of terrorism as statutorily defined, the defendant himself does not have to commit an offense listed in § 2332b(g)(5)(B), and the defendant's offense need not itself be "calculated" as described in § 2332b(g)(5)(A).

Awan, 607 F.3d at 314 (emphasis added). To read this language more narrowly in the manner that the defendant argues would "defy common sense" according to the Circuit, because then the terrorism enhancement "would not apply to defendants who clearly 'intend to promote' federal crimes of terrorism committed by other persons." Id. at 315 (emphasis in original). Using an example even further afield from conduct supporting terrorism than the defendant, the Second Circuit illustrated why this was the case:

> For example…a defendant, motivated solely by pecuniary gain, might sell weapons to a terrorist organization. It would be absurd to conclude that such a defendant's criminal conduct could not be subject to a § 3A1.4 enhancement because it was not itself a listed offense that is "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A).

Id. Accordingly, even if Probation were to credit the defendant's argument in its entirety—that she intended to promote the use of a weapon of mass destruction, but did not intend to commit a crime calculated to influence the government—the Second Circuit has affirmatively concluded that the enhancement applies in precisely such a circumstance.

The facts in this case clearly support the conclusion that the defendant and her co-conspirator's conduct here was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." "The conventional meaning of 'calculated' is 'devised with forethought'" and, therefore, "if a defendant's purpose in committing an offense is to 'influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct,' the first requirement of section 2332b(g)(5)(A) is satisfied." United States v. Stewart, 590 F.3d 93, 137 (2d Cir. 2009). As reflected in more detail in the stipulated facts attached to the plea, the following is proof that the defendants' conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct":

6

1. The overarching decision by the defendant and her co-conspirator to research and obtain materials for explosives similar to various historically significant terrorist attacks, including the World Trade Center bombing, the Boston Marathon bombing, the failed Times Square bombing and the Oklahoma City bombing. All of these attacks were calculated to influence or affect the conduct of the government, and the fact that the defendant and her co-conspirator were modeling their own plans after these attacks means that they had the same intent.

2. The defendant and her co-conspirator stated their belief in the propriety and righteousness of suicide attacks. For example, Siddiqui wrote posts for Samir Khan's magazine praising violent jihad and wrote in support of attempted vehicle-born improvised explosive device defendant Mohammad Mohamud. The defendant praised the attacks of September 11, 2001 and stated that being a martyr through a suicide attack guarantees entrance into heaven. The defendant also described viewing a video of a suicide bombing in Syria or Iraq and said it was "cool." Their statements of support and favor for politically-motivated violence further shows their intent.

3. The defendant's praise for an "admirable" attempted terrorist attack on Fort Dix, New Jersey.

4. The defendant's statement, in the context of various terrorist attacks that killed civilians, that it would be better to attack "the head, the neck, the shoulders" of the "snake," an obvious reference to directly attacking the government, rather than civilians.

5. Both the defendant and her co-conspirator's idolization of, and association with, various terrorist figures including Samir Khan, Abdullah Azzam and Usama Bin Ladin, all of whom engaged in crimes unambiguously calculated to influence or affect the conduct of government by intimidation or coercion.

6. Both the defendant and her co-conspirator's review of car bomb instructions in Inspire magazine, a propaganda magazine for a foreign terrorist organization that has engaged in numerous criminal acts that have been calculated to influence or affect the conduct of government.

The defendant's conduct throughout the conspiracy provides further proof. As noted above, the defendant studied and reviewed an article on how to make a car bomb that came from an issue of Inspire magazine. A car bomb is a common method of terrorist attacks, and the fact that the instructions were from a jihadist propaganda magazine further confirms that the purpose of any such bomb would have been to influence the government. Moreover, the defendant's intended purpose for a car bomb was made clear when, on September 1, 2014, the defendant discussed how to make explosions and also discussed the attempted bombing of Times Square by Faizal Shahzad, who also attempted to build and detonate a car bomb in a terrorist attack. See Exhibit 1 ¶ 15.

The defendant's statements and conduct further support evidence of the defendant's intent in this case. The defendant made comments on several occasions regarding the use of an explosive device in a terror attack, similar to other historical terrorist acts. On September 7, 2014, for example, the defendant discussed the 1993 World Trade Center bombing in the context of discussing how to detonate a bomb from a distance. See Exhibit 1 ¶ 16. Thus, the defendant's own statements about the goals of their research, standing alone, show that the defendant wanted to build an explosive to commit a terrorist attack.

Accordingly, both binding precedent and the facts of this case precedent support the application of the terrorism enhancement. Again, the defendant advances the same objection that Siddiqui did during her sentencing which both Probation and the Court also rejected. Thus, the defendant's objection should be denied.

IV. Conclusion

For the foregoing reasons, the government respectfully submits that (1) Probation add only those facts that are material and with the necessary context provided by the evidence; (2) the Guidelines calculation of 33 as a base offense level is accurate; and (3) the terrorism enhancement is applicable.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/ Craig R. Heeren
Craig R. Heeren
Josh Hafetz
Jonathan E. Algor
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense counsel (by ECF)
USPO Shayna Bryant (by email)